## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

|                              |     |                                    |
|------------------------------|-----|------------------------------------|
| UNITED STATES OF AMERICA,    | :   |                                    |
|                              | :   |                                    |
| Plaintiff,                   | :   |                                    |
| v.                           | :   | Criminal Action No. 04-144-06-JJF  |
|                              | :   |                                    |
| JESUS SARRAGA-SOLANA,        | :   |                                    |
|                              | :   |                                    |
| Defendant.                   | :   |                                    |

### GOVERNMENT'S MOTIONS IN LIMINE

The United States of America, by and through its attorneys, Colm F. Connolly, United

States Attorney for the District of Delaware, and Adam Safwat, Assistant United States Attorney,

hereby moves in limine as follows in regard to seven issues:

**I.   Motion to Use Evidence of Prior Drug Dealing With Co-Conspirator**

The defendant, Jesus Sarraga-Solana, is charged with conspiracy to distribute one

kilogram of heroin from on or about September 21, 2004, until December 16, 2004, in violation

of 21 U.S.C. §841(a)(1) and (b)(1)(A).  The evidence will show that the defendant's co-

conspirator, Anthony Copeland, purchased heroin from Sarraga-Solana for subsequent

distribution in Wilmington.  Copeland will testify that he knew the defendant as early as 2000.

The government wishes to introduce evidence of prior drug dealing between the defendant and

Copeland earlier in 2004.  Copeland would testify that in the earlier part of 2004, Copeland met

the defendant in Wilmington and in Philadelphia, that the defendant gave Copeland money when

he was released from jail, and that the defendant and Copeland began to deal in increasingly

larger amounts of heroin in 2004 before the time period charged in the Superseding Indictment.

Federal Rule of Evidence 404(b) permits the introduction of prior crimes to show, among

other things, intent, plan, knowledge and identity. In this case, Copeland's testimony of prior

drug dealing between the defendant and himself tends to establish the closeness of the

cooperation between Copeland and the defendant regarding price and volume of heroin, as well

as method of delivery. It also tends to establish the defendant's intent to deliver amounts of

heroin during the conspiratorial time period that are consistent with the amount charged in the

Superseding Indictment. This evidence is probative of material issues concerning the charged

conspiracy. The evidence is not unduly prejudicial, because it involves the same actors and does

not involve the use of violence, threats, or other actors. *See United States v. Butch*, 256 F.3d

171, 176 (3d Cir. 2001) (co-conspirators testimony about prior acts relevant to show

"development" of relationship between co-conspirators in drug conspiracy); *United States v.*

*McGlory*, 968 F.3d 309, 338-39 (3d Cir. 1992) (evidence of uncharged cocaine distributions

admissible to prove identity and participation in heroin distribution conspiracy). Finally, it will

not cause undue delay to present this testimony, because Copeland will already be testifying

about related events, and the additional testimony will be brief.

## II.   **Defendant's Prior Arrests Under Different Aliases**

The defendant has sustained at least two prior drug charges under different aliases. These

charges were identified through fingerprint matches in law enforcement databases. Defense

counsel has received the NCIC record of the charges. One charge was sustained on January 16,

2001, in Philadelphia, under the name of John Rosario, and the other charge was sustained on

December 13, 2002, in Bensalem Township, under the name of Edwin Pagan. Fed. R. Evid.

608(b) permits inquiry into prior bad acts of a witness if they are probative of truthfulness.

Should the defendant testify, the government would seek to impeach him by inquiry into the use

2

of different aliases he provided to police. *See United States v. Davis*, 183 F.3d 231, 256-57 (3d

Cir. 1999) (proper to allow inquiry of officer's alleged misconduct to impeach his truthfulness).

The government would not inquire into the nature of the charges.

### III.    Self-Authenticating Business Records

The government seeks to introduce as business records telephone toll records from T-

Mobile USA, Inc., for two of the defendant's cellular telephones. *See United States v. Wills*, 346

F.3d 476, 490 (4th Cir. 2003) (cellular telephone records admissible as business records).   One

set of records is for the number 267-237-8818, and the other set of records is for the number 267-

255-7866.   The government also seeks to introduce the PECO/Exelon company's billing records

for 9352 Neil Road, Apt. A, Philadelphia, PA.    Certifications under penalty of perjury have

been provided by qualified custodians attesting that these records are business records.   These

records and certifications have been produced to defense counsel.[1]   The government provided

written notice on September 20, 2005, of its intent to use the telephone toll records as evidence.

By letter dated September 22, 2005, the government provided written notice that it would rely on

Fed. R. Evid. 902(11) to self-authenticate these records.   Thus, the government respectfully

submits, the foundation for the admission of these records is met. *See generally Rambus, Inc. v.

Infineon Technologies AG,* 348 F. Supp. 2d 698, 700-705 (E.D. Va. 2004) (discussing interplay

of Rule 902(11) and Rule 803(6)).

The government's interest in addressing this matter pretrial is to streamline the trial and

to make sure that the government has all necessary witnesses at trial.   The government would

therefore respectfully request a pretrial ruling, pursuant to Fed. R. Evid. 104(a), that the

---

[1]Copies of the certifications are attached as Exhibit A.

3

certifications provide an adequate foundation for the admission of the PECO/Exelon records and the T-Mobile USA, Inc., records.

Although the government does not believe that there is any basis to object to the admission of these exhibits on the basis of relevancy, the government does not request that the Court make such a determination at this time. The government requests only that the Court rule that the certifications provide an adequate foundation to admit the exhibits as business records, without the need to call a custodian of records.

**IV.     Fed. R. Evid. 1006 Summary Exhibits of Toll Records**

The government intends to use the toll records described above as the basis for summary exhibits of calls between co-defendants during the conspiratorial time period. The underlying documents would need to be admissible in order to present the summaries to the jury. *See* Fed. R. Evid. 1006; *see generally United States v. LaGuerre*, 119 Fed. Appx. 458, 2005 WL 23412 (4th Cir. Jan. 6, 2005) (permissible to admit summaries of toll records, provided underlying records are admissible) (not precedential).

**V.     *Starks* Foundation for Admission of Audio-Recordings**

The government intends to introduce at trial five audio-recordings of conversations intercepted pursuant to a T-III court order.[2] The recordings and transcripts to be used at trial have been produced to defense counsel. They are recordings of conversations between the defendant and co-conspirator Anthony Copeland, and between Copeland and one of his customers. In *United States v. Starks*, 515 F.2d 112, 121 n.11 (3d Cir. 1975), the Third Circuit held that the government must establish the following facts by clear and convincing evidence

---

[2]Copies of the transcripts of the five audio-recordings are attached as Exhibit B.

before recordings may be authenticated:

1.   That the recording device was capable of recording the conversation now offered into evidence;

2.   That the operator of the device was competent to operate it;

3.   That the recording is authentic and correct;

4.   That changes, additions or deletions have not been made in the recording;

5.   That the recording had been preserved in a manner that is shown to the court;

6.   That the speakers are identified; and

7.   That the conversation elicited was made voluntarily and in good faith.

With respect to each of the factors above, respectively, DEA Agent Michael J. Machak is expected to testify at trial that:

1.   The recording device, a Jatom Systems Incorporated Voicebox III, was capable of recording the conversations being offered into evidence. The devices used to intercept wire communications in this case were provided by DEA headquarters. The recording was made onto a magnetic optical disk.

2.   The DEA's technical operations group personnel held a familiarization class for all operators of the equipment and were on an on-call basis as needed for issues regarding the operation of the equipment.

3.   The recordings are authentic and correct. They are the product of a T-III wire intercept that was installed on co-conspirator Anthony Copeland's cellular telephone pursuant to court order.

4.   Changes, deletions and additions cannot be made to the magnetic optical disk.

5

Copies from the disk were made by DEA agents, and the integrity of these copies has been preserved.

5.     The original magnetic optical disk was filed under seal with the Court. It is available for inspection.

6.     The voices on the recording will be identified by persons familiar with the voices as those of the defendant, Copeland, and one of Copeland's buyers.

7.     The conversations were recorded pursuant to a T-III wire intercept authorized by the court. Therefore, the conversations were not "elicited" by law enforcement personnel and were recorded lawfully.

The audio-recordings that the government seeks to introduce into evidence are also of good quality. Therefore, subject to satisfaction of *Starks*, the government respectfully moves the admission of the five audio-recordings it intends to use at trial. *See United States v. DiSalvo*, 34 F.3d 1204, 1220 (3d Cir. 1994) (affirming district court's finding that tapes were audible).

## VI.     Transcripts of Audio Recordings

The government also seeks to use the transcripts of the audio-recordings. They were prepared by a law enforcement officer who was monitoring the intercepted communications as they were recorded. They are accurate reflections of the recorded conversations and their use is permitted under Third Circuit case law. *See DiSalvo*, 34 F.3d at 1219-1220 (affirming trial court's ruling allowing jury to review transcripts while tape played and allowing Government to use enlarged transcript as demonstrative exhibit during closing); *United States v. Martinez*, 847 F.2d 125, 128-129 (3d Cir. 1988) (affirming trial court's ruling permitting use of transcript as jury aide); *United States v. Adams*, 759 F.2d 1099, 1115 (3d Cir. 1984) (same).

6

**VII.    Fed. R. Evid. 1006 Summaries of Drug Amounts Reflected In Intercepted**

**Communications of Co-Conspirator**

The government intends to use summaries of quantities of drugs discussed in recorded telephone conversations between co-conspirator Anthony Copeland and his buyers. These summaries will be used by the government's expert witness to establish the quantity of drugs sold by the defendant to Copeland during the conspiratorial time period. The government has provided notification to defense counsel by letter dated September 12, 2005, of its intent to do so, and will provide summary data to counsel once it is prepared. For reasons discussed above with respect to the admission of certain audio-recordings, the government would be able to establish the accuracy and authenticity of the recordings. The intercepted calls would not be subject to a hearsay objection, because Copeland, who will testify, would be able to identify himself as the speaker and explain that the calls concern drug amounts that were a part of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E).   These calls would be relevant to the conspiratorial activities of Copeland and the defendant, because they demonstrate one of the goals of the conspiracy–to supply heroin to drug dealers in Wilmington.   At the same time, presentation of these calls would be burdensome, and it is preferable to present a summary of the pertinent information to the jury. Therefore, the government respectfully requests a pretrial ruling as to the admissibility of these summaries under Fed. R. Evid. 1006. *See United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988) (affirming admission of chart summarizing twenty drug transactions memorialized by various hotel receipts and phone bills under Rule 1006).

/ / /

7

WHEREFORE, the government respectfully requests that its motions in limine be granted.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
Adam Safwat
Assistant United States Attorney

Dated: September 23, 2005

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 04-144-06-JJF |
| | : | |
| JESUS SARRAGA-SOLANA, | : | |
| | : | |
| Defendant. | : | |

**ORDER ON GOVERNMENT'S MOTION IN LIMINE**

WHEREAS, the Government has filed motions in limine, and the defendant has had an opportunity to respond to them,

IT IS HEREBY ORDERED that:

1.   The government may introduce evidence of the defendant's prior drug sales in 2004 to Anthony Copeland.

2.   If the defendant testifies, the government may impeach his testimony by inquiring into the use of different aliases he provided to police when he was arrested in 2001 and 2002, but may not inquire into the nature of the charges.

3.   There is an adequate evidentiary basis to admit the T-Mobile USA, Inc., telephone toll records described in the government's certification and the PECO/Exelon record described in the government's certification.   Subject to any relevancy or relevancy-related objections, these exhibits will be admitted at trial.

4.   Summaries of admissible telephone records will be admissible at trial.

5.   Summaries of co-defendant Anthony Copeland's intercepted conversations relating

to drug amounts shall be admissible at trial for purposes of expert testimony.

   6.  Subject to the proffered *Starks* foundation, the five audio-recordings of the

defendant's and co-defendant's conversations shall be admissible at trial, as shall the transcripts

prepared by the government.

Dated: October _____ , 2005

               _____

               THE HONORABLE JOSEPH J. FARNAN, JR.
               UNITED STATES DISTRICT JUDGE

2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 04-144-06-JJF |
| | : | |
| JESUS SARRAGA-SOLANA, | : | |
| | : | |
| Defendant. | : | |

## **EXHIBIT A TO GOVERNMENT'S MOTIONS IN LIMINE**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

JESUS SARRAGA-SOLANA,

       Defendant.

:
:
:
:
:
:
:
:
:
:

Crim. Action No. 04-144-06-JJF

## **CERTIFICATION**

I, _SUSAN JOHNSON_ hereby swear and certify under penalty of perjury:

1. I am a custodian of records for T-Mobile USA, Inc., which has a location in Parsippany, New Jersey.

2. During all relevant and material times concerning the attached records:

    a.    T-Mobile USA, Inc. was and is a business which provides telephone services;

    b.    it was and is the regular practice of T-Mobile USA, Inc. to make memoranda, reports, records, and data compilations concerning the sales, usage, and billing of its telephone service;

    c.    employees of T-Mobile USA, Inc. make and keep these memoranda, reports, records and data compilations in the ordinary course of the regularly conducted business activity of T-Mobile USA, Inc.;

    d.    the employees who make these memoranda, reports, records, and data compilations, make these memoranda, reports, records and data

compilations of acts and events: 1) at or near the time the information

contained therein is transmitted to those employees, and 2) from

information transmitted by persons with knowledge of the information;

and

e.    the following attached records (pertaining to subscriber information and

certain toll records for these telephone numbers) for cellular telephone

numbers **267-237-8818** and **267-255-7866** are memoranda, reports,

records and data compilations of records of the regularly conducted

business activity of T-Mobile USA, Inc. made and kept as stated above.

_____
Name

_____
Title

Date: __9-16-05__

## ATTACHMENT TO SUBPOENA

Please provide all subscriber information for the following telephone numbers:

**267-237-8818** and 26768829

**267-255-7866** 26088498

for the period September 1, 2004 to (and including) December 16, 2004, including but not limited to:

1.    Name of subscriber;

2.    Address of subscriber;

3.    Toll records;

4.    Local and long distance telephone connection records, or records for session times and durations, length of service, including start date, and types of service utilized;

5.    Means and source of payment for such service, including any credit card or bank account number; and

6.    Telephone or instrument number for other subscriber number or identity.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

   Plaintiff,

     v.

JESUS SARRAGA-SOLANA,

   Defendant.

:
:
:
:
:
:
:
:
:

Crim. Action No. 04-144-06-JJF

### CERTIFICATION

I, _Anthony J. Costello_, hereby swear and certify under penalty of perjury:

1. I am a custodian of records for Exelon Business Services Company ("Exelon") which has a location in Philadelphia, Pennsylvania.

2. During all relevant and material times concerning the attached records:

 a. Exelon was and is a utility company serving residents in Philadelphia;

 b. it was and is the regular practice of Exelon to make memoranda, reports, records, and data compilations concerning the sales, usage, and billing of its utilities services;

 c. employees of Exelon make and keep these memoranda, reports, records and data compilations in the ordinary course of the regularly conducted business activity of Exelon;

 d. the employees who make these memoranda, reports, records, and data compilations, make these memoranda, reports, records and data compilations of acts and events: 1) at or near the time the information

contained therein is transmitted to those employees, and 2) from information transmitted by persons with knowledge of the information; and

e.  the following attached records (pertaining to billing information) for the account at 9352 Neil Road, Apartment A, Philadelphia, PA, are memoranda, reports, records and data compilations of records of the regularly conducted business activity of Exelon made and kept as stated above.

Name _____

Title __Regulatory Assessor_____

Date: _____9-2+-05_____

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 04-144-06-JJF |
| | : | |
| JESUS SARRAGA-SOLANA, | : | |
| | : | |
| Defendant. | : | |

## EXHIBIT B TO GOVERNMENT'S MOTIONS IN LIMINE

## UNITED STATES V. JESUS SARRAGA-SOLANA, AKA: CHRISTIAN DIAZ
## CRIMINAL ACTION NO.

| | |
|---|---|
| **Session No.** | **1836** |
| **Date** | **12/03/2004** |
| **Time** | **1325:26** |
| **Call From** | **unknown number** |

COPELAND SPEAKING WITH AN UNKNOWN FEMALE, GENERAL
CONVERSATION REGARDING THE HEALTH OF COPELAND'S MOTHER.
COPELAND RECEIVES THE FOLLOWING INCOMING CALL:
**Call waiting incoming call from 267-237-8818**

SARRAGA: He's on the way over there, uh

COPELAND:  Alright, he just left?

SARRAGA: Yeah, he left, like uh five like ten minutes, ten to fifteen minutes ago.

COPELAND: Alright, Alright, alright, OK that's good then.

SARRAGA: Before I uh start anything I'm gonna let you test that first, you know what I
mean.

COPELAND: inaudible

SARRAGA: It's a little different.

COPELAND:  You don't know if it's strong or not?

SARRAGA: It looks, It looks good because he has some of the other stuff, you know
what I mean?

COPELAND: Yeah

SARRAGA: The one we have before

COPELAND: Yeah

SARRAGA: They gave me like a, something different to so I put them both together.  So
I don't know how it's gonna be, if it's gonna be stronger.  It's probably gonna be strong.

COPELAND: Alright

SARRAGA: But I'm not sure.  Before I start anything, just let me know.

COPELAND: Alright.

SARRAGA: Alright.

COPELAND SWITCHES BACK OVER TO ORIGINAL CONVERSATION WITH
UNKNOWN FEMALE.
*JMK*

UNITED STATES v. JESUS SARRAGA-SOLANA
CRIMINAL ACTION NO. 04-144-06-JJF

| | |
|---|---|
| **Session No.** | **1893** |
| **Date** | **12/03/2005** |
| **Time** | **1735:07** |
| **Call From** | **267-237-8818** |

COPELAND: Yo What's Up?

SARRAGA: Yo how's your mom doing big guy?

COPELAND: I'm not even around man, I'm, I'm . . . out with my girl today, my brother got

SARRAGA: UH

COPELAND: My brother out, my brother is doing everything, I'm out

SARRAGA: Oh Yeah, she alright though?

COPELAND: I don't know, I don't know, I'm, I'm out with my girl man, I don't even know

SARRAGA: Okay, Okay, yo, ah . . . you didn't have time to check that right?

COPELAND: Nope, I ain't have no time man

SARRAGA: Alright that's all

COPELAND: I'm still, I'm still checking on that bird for you too, man

SARRAGA: What happened?

COPELAND: I'm still looking for that bird for you too

SARRAGA: Yea I have one from New York coming up tonight, ehh (laughter in background)

COPELAND: Oh, I wish you would have told me, I've been looking around for you

SARRAGA: Yea she just came, I just know today, my brother tell me he got a girl for me . . . ah, she coming all the way from New York to meet me, so.........so I feel important now (laughter in the background)

COPELAND: I'm talking about the bird, the bird

SARRAGA:   Ah the bird, I got the bird

COPELAND: Yea

SARRAGA:   The bird, I got it already

COPELAND: Why didn't you tell me that man, I've been looking and shit man

SARRAGA:   You should have told me you been looking, I got it like . . . ah . . . like two days ago

COPELAND: Oh, Oh alright

SARRAGA:   Yeah, two days ago, I just got it

COPELAND: Alright Papi

SARRAGA:   Yeah, yeah, I'm living alone and shit, I gotta have to get, have something . . . . something (inaudible) (laughter) Check on that for you, check on that for me tomorrow morning so I can start on it, whatever, you know?

COPELAND: Alright

SARRAGA:   Just check on me . . . for me tomorrow

COPELAND: Alright

SARRAGA:   Alright

UNITED STATES v. JESUS SARRAGA-SOLANA
CRIMINAL ACTION NO. 04-144-06-JJF

| | |
|---|---|
| **Session No.** | **1921** |
| **Date** | **12/03/2005** |
| **Time** | **2116:24** |
| **Call From** | **302-367-6952** |

COPELAND: Yo

U/MALE:     Yo what's up

COPELAND: Yo (inaudible) ask, Yo ask your peoples (inaudible) and your peoples if
they like that

U/MALE:     I can't hear you

COPELAND: Call one of your peoples that you gave that too, and see if they liked that

U/MALE:     Alright

COPELAND: Alright

UNITED STATES v. JESUS SARRAGA-SOLANA
CRIMINAL ACTION NO. 04-144-06-JJF

**Session No.**   **1922**
**Date**   **12/03/2005**
**Time**   **2118:22**
**Call From**   **302-367-6952**

COPELAND: Yo

U/MALE:   Yo they said, they said it got like the same taste, but um, um, they said it got
like the same taste but the motherfucker, uh Death Row the strongest.

COPELAND: Stronger than DMX?

U/MALE: Yeah

COPELAND: I . . . I don't believe that man, that's crazy

U/MALE: That's what they just said

COPELAND: That's a mind thing, man, alright

U/MALE: Huh, yeah its like yeah, I feel you

COPELAND: Alright

U/MALE: It It for-real for real, all that shit is, cause ain't it all the same shit?

COPELAND: Yeah, they say its still strong though right?

U/MALE: Yeah, he, he said it's alright

COPELAND: Alright

U/MALE: Alright

UNITED STATES v. JESUS SARRAGA-SOLANA
CRIMINAL ACTION NO. 04-144-06-JJF

Session No.   **1923**
Date          **12/03/2005**
Time          **2119:40**
Call To       **267-237-8818**

SARRAGA:   Yo

COPELAND:  Yo he said it could be stronger, he said its alright though, its motherfucker
           said um death row stronger than the DMX, (inaudible) its a mind game
           right there

SARRAGA:   Its the same thing, hehe

COPELAND:  I know, I know, I ain't even

SARRAGA:   Ah . . .

COPELAND:  I ain't even . . .

SARRAGA:   . . . what they say, its good?

COPELAND:  Yeah, they say it could be stronger though

SARRAGA:   The way it was before, before they . . . strong . . .

COPELAND:  Nah, like a couple people said it could be stronger, I call a few my people,
           told them to call their peoples and it they were like its yo alright, it could,
           you know basically it could be stronger, you know what I'm saying?

SARRAGA:   Um, but how they, is it like before, better or you don't know?

COPELAND:  Nah, its the same, same taste, the same taste

SARRAGA:   Same taste?

COPELAND:  Yeah, but they say it could be stronger though, that's basically it
           (inaudible)

SARRAGA:   Basically the same?

COPELAND:  Yeah, it just a need to be a little stronger

SARRAGA:   Yeah, it it's it's basically um I put, I added, ah . . . ah . . . a different one

on it, and its basically the same though, you been moving a lot though

COPELAND:    Yeah,

SARRAGA:    You know what I mean

COPELAND:    Yeah

SARRAGA:    So I don't want to change anything else, I might just keep it there, cause you been moving it you know what I mean?

COPELAND:    Yeah

SARRAGA:    What, what you think?

COPELAND:    I'm mean, I'm, I'm good, I was waiting, I was waiting, I waiting for you to give me a better number

SARRAGA:    What you mean?

COPELAND:    I'm mean that I –I-I-I'm trying, I'm trying, I'm trying to see, I'm trying to gross like you, like you make a week

SARRAGA:    Like who?

COPELAND:    I'm, I'm trying gross like $100,000 like you a week

SARRAGA:    Yeah, but I don't know, It's not mine you know I have to pay that thing, it goes from my hand to another hand, to another hand, you know how it is?

COPELAND:    Yeah, man I know

SARRAGA:    (inaudible) you give to me and I give somebody else, that people he give it to somebody else, and it keeps going, its a chain, you know how it is?

COPELAND:    Yeah man, but you, you need to talk him, tell him that I'm moving them shit man, I'm, I can I can move might be moving more if I can come down a number, if I have people grab 400 of them, I mean grabbing 200 of them, I can tell them. I can tell them, I can tell them I get it for 58, they look at me like man, I know you can go better than that.

SARRAGA:    Yeah I know, you know when things come from from a couple hands, you know what I mean, it doesn't come from like straight, straight to me,  like I don't talk to them people from over there, not from Colombia, if I would have been talking to them straight, I would, I would have given you way better number, but its like I talk to somebody else and that person talks to .

. . to them, you know what I mean? Its like . . . its like we're in the middle, you know what I mean? (inaudible) That's what it is, or otherwise I would have give you better number. I got to put more workers, gotta put workers in there, you gotta analyze a lot of stuff, man, its not, its not easy. You know?

COPELAND: Yeah, um go ahead, start that. I going, I'm gonna, gonna see you tomorrow

SARRAGA: Alright, I'm going to start it in the morning ok, So it's basically the same then, right?

COPELAND: Yeah,

SARRAGA: Alright

COPELAND: Alright

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 04-144-06-JJF |
| | : | |
| JESUS SARRAGA-SOLANA, | : | |
| | : | |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

I, Adam Safwat, an Assistant United States Attorney in the Office of the United States

Attorney for the District of Delaware, hereby attest under penalty of perjury that on the 23rd day

of September, 2005, I electronically filed **GOVERNMENT'S MOTIONS IN LIMINE** and

**PROPOSED ORDER** with the Clerk of Court using CM/ECF.  Said document is available for

viewing and downloading from CM/ECF.   Two copies of the foregoing documents were sent on

September 23, 2005, via federal express, overnight delivery, and courtesy copy via facsimile, to

counsel of record below:

> Joseph A. Canuso, Esq.
> Attorney-at-Law
> 123 S. Broad Street
> Suite 1812
> Philadelphia, PA 19109

Adam Safwat
Assistant United States Attorney
adam.safwat@usdoj.gov